**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

_____
                                    )
DAVID K. and KATHLEEN MACDOWELL,    )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )   C. A. NO.: 07-12116-RGS
                                    )
                                    )   **ORAL ARGUMENT REQUESTED**
AMERIQUEST MORTGAGE COMPANY,        )
AMC MORTGAGE SERVICES, INC., and    )
DEUTSCHE BANK NATIONAL TRUST,       )
                                    )
            Defendants.             )
_____ )

**AMERIQUEST MORTGAGE COMPANY'S AND
AMC MORTGAGE SERVICES, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1(B)(1), defendants Ameriquest Mortgage Company ("Ameriquest") and AMC Mortgage Services, Inc. ("AMC") (collectively, "defendants") submit this Memorandum of Law in Support of Their Motion to Dismiss the Complaint Seeking to Enforce Settlement Agreement and to Set Aside Foreclosure Sale ("Complaint") filed by plaintiffs David K. and Kathleen MacDowell ("plaintiffs").

**I.    INTRODUCTION**

Plaintiffs' Complaint turns on allegations that in 2002, Ameriquest made misrepresentations to plaintiffs concerning the terms of their mortgage loan, and that these misrepresentations led to a chain of events ending in the alleged wrongful foreclosure of their home. Plaintiffs seek monetary damages relating to the alleged misrepresentation of their loan's terms, as well as specific performance of a settlement agreement that they claim they entered into

following the foreclosure. Plaintiffs, however, waited nearly five years from the date of the alleged misrepresentations to file their Complaint, and the alleged agreements that they point to are unenforceable as a matter of law. The Complaint should be partially dismissed for the following reasons.

**First**, regardless of whether a settlement agreement exists, its enforcement is barred by the statute of frauds and the doctrine of impossibility, and thus Count I cannot survive.

**Second**, plaintiffs' claims for breach of contract (Count III and IV) and intentional misrepresentation (Count V) are time barred by the applicable statute of limitations.

**Third**, plaintiffs' breach of contract claims (Counts III and IV) against Ameriquest must fail because they depend on alleged pre-contractual oral statements that have been integrated into and extinguished by the Note and Mortgage.

**Fourth**, because valid, express contracts govern the relationship of the parties, plaintiffs cannot state a claim for unjust enrichment, and Count VIII must fail.

**Fifth and finally**, plaintiffs' claim for a breach of the covenant of good faith and fair dealing against Ameriquest (Count VII) must fail because the alleged agreements upon which it is based have been extinguished by the Note and Mortgage.

II.    **SUMMARY OF PLAINTIFFS' ALLEGATIONS**

Plaintiffs allege that they reside at 425 Wheeler Road, Dracut, Massachusetts (the "Property"). Complaint at ¶ 5. In 2002, plaintiffs applied for and received a mortgage loan from Ameriquest (the "2002 Ameriquest Loan") to refinance the Property. Id. at ¶¶ 1, 14. At the closing, on August 17, 2002, plaintiffs executed a Note and Mortgage. See Exhibits A & B,

attached to Declaration of Counsel ("Winder Decl.").[1] Plaintiffs later fell behind in their payments to AMC, the servicer of the Ameriquest Loan, and they entered into a forbearance agreement with AMC in 2005 in an effort to cure their arrearage. Id. at ¶¶ 19-20. Due to plaintiffs' failure to make timely payments, the forbearance agreement was canceled, and Ameriquest commenced foreclosure proceedings. Id. at ¶¶ 27-28, Exhibits A & B to Complaint. The Property was sold at a foreclosure sale, held on February 21, 2006. Id. at 44.

Plaintiffs, through their attorneys, contested the eviction proceedings that followed the foreclosure, and the parties subsequently agreed to dismiss the eviction case, pending settlement negotiations. See id. at ¶¶ 47-48. Over a one-year period, from mid-2006 to mid-2007, the parties' counsel corresponded in an effort to reach some resolution of their clients' differences. See id. at ¶¶ 49-52. Plaintiffs allege that their counsel reached an agreement with Ameriquest in mid-2006. See id. at ¶¶ 49-53, Ex. D. According to plaintiffs, the terms of the alleged agreement were that Ameriquest would deed the Property to plaintiffs and originate a new 30-year fixed mortgage on the Property. See id. at ¶ 49.

Plaintiffs now bring the following claims against Ameriquest and AMC:

- Count I (Enforcement of Settlement Agreement): Plaintiffs allege that they had a "valid and enforceable settlement agreement" which defendants "have refused to honor." Id. at ¶¶ 54-55. Plaintiffs seek injunctive relief to enforce the purported settlement agreement. Id. at ¶ 56.

- Count III (Breach of Contract): Plaintiffs assert that Ameriquest breached an oral agreement, predating the 2002 Ameriquest Loan, with plaintiffs to provide certain

---

[1] On a motion to dismiss, the Court may consider the Complaint as well as "matters fairly incorporated within [the Complaint]." E.g., In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).

mortgage loan terms and then "deliver[ed] different terms at closing than the ones initially promised." Id. at ¶ 66.

- Count IV (Breach of Contract): By asserting that Ameriquest failed to "provide agreed-upon discounted interest rates," plaintiffs allege that Ameriquest breached pre-closing agreements related to the 2002 Ameriquest loan. Id. at ¶¶ 71-73.

- Count V (Intentional Misrepresentation): Plaintiffs allege that Ameriquest intentionally misrepresented the terms of the proposed 2002 Ameriquest Loan in order to induce plaintiffs to refinance their loan with Ameriquest. Id. at ¶¶ 77-79.

- Count VII (Breach of Covenant of Good Faith and Fair Dealing): Plaintiffs allege that Ameriquest, in connection with the 2002 Ameriquest Loan, breached the covenant of good faith and fair dealing when it purportedly failed to provide promised terms, including discounted interest points. Id. at ¶¶ 94-95.

- Count VIII (Unjust Enrichment): Plaintiffs allege that Ameriquest and AMC were unjustly enriched by making and servicing purported "predatory and unfair mortgage loans." Id. at ¶ 99.

As set forth more fully below, plaintiffs' above-listed claims fail as a matter of law.

### III. STANDARD OF REVIEW

In deciding a motion to dismiss, the Court should apply the standard set forth under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In re Colonial Mortgage Bankers Corp., 324 F.3d 12 (1st Cir. 2003). Although, for the purposes of this motion, the Court must assume the truth of all well-pleaded facts in plaintiffs' Complaint, dismissal is appropriate where, as here, "the plaintiff's factual averments hold out no hope of recovery on any theory adumbrated" in the Complaint. In re Colonial, 324 F.3d at 15. A complaint containing "labels and conclusions, and

a formulaic recitation of a cause of action's elements" will not suffice to defeat a motion to dismiss. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007). Thus, while it is axiomatic that a court must accept the allegations of the Complaint as true for purposes of deciding a motion to dismiss, "[c]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Where plaintiffs "have not nudged [their] claims across the line from conceivable to plausible, [their] [C]omplaint must be dismissed." Bell Atlantic Corp., 127 S. Ct. at 1974.

Application of these standards here requires that Counts I, III, IV, V, VIII and, only as to Ameriquest, Count VII, be dismissed as a matter of law, with Counts II, VI, IX, X, XI, XII, XIII, and, only as to AMC, Count VII, remaining.

## IV.    ARGUMENT

### A.    Count I (Enforcement of Settlement Agreement) is Barred by the Statute of Frauds and the Doctrine of Impossibility

#### 1.    The Alleged Agreement Falls Within the Statute of Frauds and Plaintiffs Fail to Demonstrate a Signed Memorandum by Defendants

The purported settlement agreement between plaintiffs and Ameriquest, by which Ameriquest would deed the Property to plaintiffs and originate a new 30-year mortgage, falls within the statue of frauds. Plaintiffs therefore must plead the existence of a writing signed by defendants containing the terms of the contract plaintiffs seek to enforce. See Hachikian v. F.D.I.C., 914 F.Supp. 14, 17 (D. Mass. 1996). Specifically, Mass. Gen. Laws ch. 259, § 1 provides in relevant part that:

> No action shall be brought…[u]pon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them,…[u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

In interpreting the statute, Massachusetts courts have ruled that an agreement to convey land falls within the statute of frauds, as the right to possession of land is an "interest in" land.  See Ravosa v. Zais, 40 Mass. App. Ct. 47, 50 (1996).  Likewise, "[a] contract by a mortgagee to relinquish his interest in the land in favor of another, is within the statute [of frauds]."  Montouri v. Bailen, 290 Mass. 72, 75 (1935).

The statute of frauds provides a complete defense to specific performance of an agreement to convey property.  See Nessralla v. Peck, 403 Mass. 757, 762 (1989).  The Court may properly dismiss contract claims if it appears from the complaint that the alleged agreement is based upon oral representations, or otherwise fails to satisfy the requirements of the statute of frauds.  See Weiner v. Lowenstein, 314 Mass. 642, 645 (1943) ("If it appears from the declaration in an action at law, or from the bill in a suit in equity, that the representations alleged are oral, when by the statute of frauds they must be in writing, demurrer will lie"); Cluff v. Picardi, 331 Mass. 320, 322 (1954) (contract claims are properly dismissed where nothing in the alleged memorandum binds the defendant).

Here, plaintiffs seek to enforce an alleged agreement by Ameriquest to deed the Property to plaintiffs and to extend them a new mortgage.  Both of these acts fall within the scope of the statute of frauds.  See Denvir v. N. Ave. Sav. Bank, 290 Mass. 137, 138 (1935) ("An agreement to exchange a mortgage on real estate for other property is an agreement to convey an interest in land and to be enforceable must be in writing.").  But by plaintiffs' own admission, the purported settlement agreement that they seek to enforce is derived from a series of oral communications, emails, and letters.  See, e.g., Complaint at ¶ 49, Ex. D ("Based on previous telephone conversations…Ameriquest has agreed to deed the property….") (emphasis added).  None of these communications satisfy the statute of frauds.  This is evidenced by the letter found at

Exhibit B to the Complaint, which plaintiffs contend demonstrates that the parties had entered into an alleged settlement agreement. That letter, however, is from plaintiff's counsel, not Ameriquest or its counsel, and it is not signed by Ameriquest, "the party to be charged." See Complaint at Ex. D. Under the circumstances, plaintiffs have failed to plead – and cannot plead – the existence of an enforceable contract to convey land that satisfies the statute of frauds. Count I of the Complaint must therefore be dismissed.

### 2. The Alleged Agreement Is Unenforceable Under the Doctrine of Impossibility

The doctrine of impossibility also bars enforcement of any alleged settlement agreement. Under the doctrine,

> where from the nature of the contract it appears that the parties must have from the beginning have contemplated the continued existence of some particular specified thing as the foundation of what was to be done, then, in the absence of any warranty that the thing shall exist...the parties shall be excused…when performance becomes impossible from the accidental perishing of the thing without the fault of the other party.

Chase Precast Corp. v. John J. Paonessa Co., Inc., 409 Mass. 371, 373 (1991) (courts have "long recognized and applied the doctrine of impossibility as a defense to an action for breach of contract").

The parties' alleged agreement contemplates that Ameriquest would continue to act as a licensed mortgage lender under the laws of the Commonwealth of Massachusetts and that Ameriquest would lawfully extend a mortgage loan to plaintiffs. Ameriquest's performance, however, is now made impossible because it no longer holds a license to originate mortgages in the Commonwealth of Massachusetts. See Letter from ACC Capital Holdings Corporation to Mass. Division of Banks, dated Sept. 18, 2007, attached hereto as Ex. C to Winder Decl. (noting that Ameriquest will cease all operations and surrender any lending licenses as of September 30, 2007); Letter from ACC Capital Holdings Corporation to Mass. Division of Banks, dated Sept.

14, 2007, attached hereto as Ex. D to Winder Decl. (noting that AMC will cease all operations and surrender any lending licenses as of September 30, 2007).[2]

Massachusetts law explicitly prohibits the origination of residential mortgages by an unlicensed lender. Mass. Gen. Laws. ch. 255E, § 2 ("No person shall act as a mortgage broker or mortgage lender with respect to residential property unless first obtaining a license from the commissioner."). It would be impossible for Ameriquest or AMC to comply with the alleged agreement with plaintiffs and also comply with Mass. Gen. Laws. ch. 255E, § 2. Massachusetts courts will not grant specific performance of a contract where, through intervening circumstances, performance becomes impossible or unlawful due to a lack of proper licensing. See Sears v. City of Boston, 33 Mass. (16 Pick.) 357, 358-59 (1835) (refusing to grant specific performance where performance became impossible by revocation of license to use adjoining land); Taylor v. R.C. Maxwell, Co., 31 F.2d 711, 714 (1st Cir. 1929) (court will not grant specific performance where agreement valid in its inception becomes illegal without valid permit); see also Ferrero v. Coutts, 591 A.2d 1320, 1321-22 (N.H. 1991) (specific performance unavailable where party unable to grant mortgage because it required the consent of a third party); Pipkin v. Thomas & Hill, Inc., 258 S.E.2d 778, 783 (N.C. 1979) (specific performance

---

[2] On a motion to dismiss, the Court may consider "matters of public record." E.g., In re Colonial Mortgage Bankers Corp., 324 F.3d at 15. The List of Mortgage Lender Licensees and ACC Capital Holdings Corporation's letter to the Massachusetts Division of Banks are matters of public record on file with the Massachusetts Division of Banks. See Mass. Gen. Laws ch. 4, § 7, cl. 26 ("'Public records' shall mean all…documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth."); Mass. Gen. Laws ch. 66, § 10(a) ("Every person having custody of any public record, as defined in clause Twenty-sixth of section seven of chapter four, shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person.").

unavailable where mortgage banker's financial inability to fund loan made it impossible to comply with agreement).

Further, courts will not enforce agreements that require a party to provide unlicensed services. See, e.g., Vista Designs, Inc. v. Silverman, 774 So.2d 884, 886 (Fla. App. 2001) (enforcement of contracts for unlicensed services would "deprive the public of the benefit of regulatory measures"); DeReggi Constr. Co. v. Mate, 747 A.2d 743, 746 (Md. App. 2000) (court will not lend its assistance to enforce agreement which would involve providing unlicensed services); Billes v. Bailey, 555 A.2d 460, 462 (D.C. App. 1989) (executory contract with unlicensed home improvement contractor will not be enforced); Domizio v. Delahunty, 419 A.2d 912, 912-13 (Ct. Sup. Ct. 1980) ("[F]ailure to have a license will preclude enforcement by the actor of any contract for performance of work which falls within the field of licensure."). Because plaintiffs seek to enforce an unlicensed entity to originate a mortgage loan, the Court should dismiss Count I as unenforceable.

## B. Count V (Intentional Misrepresentation) Is Time Barred By the Applicable Statute of Limitations

Plaintiffs allege that Ameriquest intentionally misrepresented the terms of the 2002 Ameriquest Loan, specifically, the cash proceeds and the discount points that plaintiffs would receive and the prepayment penalty that would apply. See Complaint at ¶¶ 1, 78. Plaintiffs, however, closed on the Ameriquest Loan over five years ago -- on August 17, 2002, id. at ¶ 14, and their intentional misrepresentation claim is time barred. Claims for fraudulent or intentional misrepresentation are tort claims, and as such, they are subject to a three-year statute of limitations. Mass. Gen. Laws ch. 260, § 2A; Tagliente v. Himmer, 949 F.2d 1, 4 (1st Cir. 1991); Beaconsfield Townhouse Condo. Trust v. Zussman, 49 Mass. App. Ct. 757, 761 (2000) (misrepresentation claims are subject to three-year statute of limitations).

The three-year statute of limitations on an intentional misrepresentation claim accrues at the time of the injury, which here would be at the time of the refinance closing on August 17, 2002.  See Tagliente, 949 F.2d at 4 (alleged injuries for misrepresentation claims relating to sale of property occurred at time of sale); see also Salois v. Dime Sav. Bank of New York, FSB, 128 F.3d 20, 25 (1st Cir. 1997) (inadequate disclosure claims accrue at the time plaintiffs execute their loan documents); Mills v. Andover Bank, 1999 WL 1336606, at *4 (Mass. Sup. Ct. Jan. 5 1999) (same).  In 2002, as of the time of closing, plaintiffs had all of the information that they needed to bring a claim based on alleged misrepresentations of the loan's terms.  Because plaintiffs filed this action in September 2007, see Complaint at p. 18, their intentional misrepresentation claim is untimely.

C.    **Counts III and IV (Breach of Contract) Are In Essence Claims For Misrepresentations and Are Time Barred by the Applicable Statute of Limitations**

In Counts III and IV, plaintiffs assert that Ameriquest breached alleged oral agreements by misrepresenting the terms of their mortgage loan.  See Complaint at ¶¶ 62-75.  Plaintiffs, however, have attempted to avoid the statute of limitations on misrepresentation claims by characterizing them as breach of contract claims.  "A plaintiff may not, of course, escape the consequences of …a statute of limitations on tort actions merely by labeling the claim as contractual."  Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818, 823 (1986).  The gravamen of plaintiffs' claims is that Ameriquest misrepresented the terms of plaintiffs' mortgage loan.  Indeed, plaintiffs admit in the opening paragraph of their Complaint that "[i]n the refinance transaction, Ameriquest…misrepresented loan terms."  Complaint at ¶ 1.  Moreover, plaintiffs subtitle their breach of contract claim as a "Bait and Switch."  Complaint at Count III.  A "classic bait and switch scheme" occurs when a party allegedly deceives and misleads another party by providing goods or services different than those originally represented.

See Wherry v. Showcase Isuzu, Inc., 2006 WL 163331, at *1 (Mass. App. Ct. Jan. 23, 2006). Here, plaintiffs allege just that – that Ameriquest represented certain loan terms to induce plaintiffs into the transaction, and then delivered different loan terms at the closing. See Complaint at ¶¶ 62-75.

Because plaintiffs allege contract claims that are in fact misrepresentation claims, the applicable statute of limitations must be that for misrepresentation. See Slingsby v. Metro. Ins. Co., 2001 WL 389347, at *2 (Mass. App. Div. Apr. 4, 2001); Grande v. PFL Ins. Co., 2000 WL 1476676, at *2 (Mass. App. Div. Sept. 27, 2000). As outlined above, misrepresentation claims are subject to a three-year statute of limitations. See Tagliente, 949 F.2d at 4. The statute of limitations on a misrepresentation claim accrues at the time of the injury, which here would be at the time of the refinance closing on August 17, 2002, when the final terms of the mortgage were disclosed to plaintiffs. See id. (alleged injuries for misrepresentation claims relating to sale of property occurred at time of sale); see also Exs. A & B to Winder Decl. Because plaintiffs filed this action in September 2007, see Complaint at p. 18, their miscast breach of contract claims are untimely.

**D.    Counts III and IV (Breach of Contract) Fail Because Plaintiffs Have Not Alleged A Breach Of Any Term Of Their Mortgage Contract And Base Their Claim Entirely On Pre-Closing Oral Promises That Are Not Part Of The Parties' Contract**

It is black letter law that to state a claim for breach of contract, the plaintiff must first allege a breach. Yarde Metals, Inc. v. New England Patriots Ltd. P'ship, 64 Mass. App. Ct. 656, 660 (2005) (affirming Rule 12(b)(6) dismissal of breach of contract claim where no breach of agreement). Here, plaintiffs' breach of contract claim fails because plaintiffs plead no specific facts that Ameriquest breached the Note or the Mortgage, which together form the basis for the parties' loan agreement. Instead, plaintiffs plead facts based upon pre-contractual discussions.

See Complaint at ¶¶ 63, 73. Pre-contractual discussions, however, form an insufficient basis for a breach of contract claim where, as here, the signed agreement constitutes the entire agreement between the parties. See McCartin v. Westlake, 36 Mass. App. Ct. 221, 231-33 (1994) (when parties sign contract indicating that the signed contract constitutes the entire binding agreement, parties cannot sue based upon pre-contractual representations or negotiations); see also Note and Mortgage, Exs. A & B to Winder Decl. (detailing terms of plaintiffs' mortgage loan).

Under Massachusetts law, the execution of an integrated agreement precludes recovery for pre-contractual conduct or representations because such an agreement "discharges prior agreements that [are] inconsistent with them." Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1123 & n.2 (1st Cir. 1995). A contract is an integrated agreement when it "constitutes a final expression of one or more terms of an agreement." Id. at 1123. Thus, oral representations not made a part of an integrated contract are not legally binding and are thereby extinguished. Winchester Gables, Inc. v. Host Marriott Corp., 2007 WL 3133410, at *5 (Mass. App. Ct. Oct. 30, 2007). Further, the parol evidence rule prohibits plaintiffs from relying upon extrinsic evidence to vary the terms of an integrated agreement. Boston Edison Co. v. F.E.R.C., 856 F.2d 361, 367 (1st Cir. 1988); Coll, 50 F.3d at 1122.

Here, the Mortgage and Note set forth the full terms of the loan, including the parties' intentions and obligations, and thus they preclude reliance on any prior agreements or discussions. See Exs. A & B to Winder Decl. Moreover, the Note has an integration clause that states:

> Oral agreements, promises or commitments to lend money, extend credit, or forebear from enforcing repayment of a debt…are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to.

See Note at 3. This integration clause appears directly above plaintiffs' signatures to the Note indicating their consent to its terms. Plaintiffs' alleged oral agreements are extinguished by the integration clause. See Winchester Gables, Inc., 2007 WL 3133410, at *5. Plaintiffs may not now pursue a claim based on prior or contemporaneous statements that contradict the terms of the agreement they executed. See Boston Edison, 856 F.2d at 367; McCarthy, 2002 WL 1067179, at *3; Galvin v. Excel Switching Corp., 2006 WL 1719922, at *6 (Mass. Super. Ct. May 23, 2006). Plaintiffs' breach of contract claims are irreconcilable with the parties' loan agreement, and for that reason, their allegations of breach of pre-contractual promises must fail.

**E.    Count VIII (Unjust Enrichment) Fails Because a Valid and Enforceable Contract Governs the Terms of Plaintiffs Mortgage Loan**

Unjust enrichment is an equitable remedy which is only available to plaintiffs who lack an adequate remedy at law. See Ruiz v. Bally Total Fitness Holding Corp., 447 F. Supp.2d 23, 29 (D. Mass. 2006). Plaintiffs' claims for unjust enrichment cannot stand because a valid, express contract governs the relationship between the parties. See Okmyansky v. Herbalife Int'l of Am., 415 F.3d 154, 162 (1st Cir. 2005); Ruiz, 447 F. Supp.2d at 29; Zarum v. Brass Mill Materials Corp., 334 Mass. 81, 85 (1956) ("[the] law will not imply a contract where there is an existing express contract covering the same subject matter"). In their unjust enrichment claim, plaintiffs allege that AMC and Ameriquest originated and serviced "predatory and unfair mortgage loans." Complaint at ¶ 98. Such claims are based upon the further allegations that Ameriquest "charged high closing costs and misrepresented loan terms" and that AMC "failed to provide [plaintiffs] with accurate and consistent information about the amounts they owed" under the forbearance agreement  Id. at ¶¶ 1-2. Plaintiffs' relationship with Ameriquest and AMC with respect to the 2002 Ameriquest Loan, however, is expressly governed by the Note and Mortgage executed by them at the closing on August 17, 2002. See Exs. A & B. Further,

the parties' relationship with respect to the forbearance period is governed by the forbearance agreement. See Complaint at ¶ 20.

Plaintiffs have failed to allege that they are without an adequate legal remedy. To the contrary, plaintiffs have alleged that they entered a mortgage loan agreement at the closing on August 17, 2002, and into a forbearance agreement in November 2005. See Complaint at ¶¶14, 20; see also Exs. A & B to Winder Decl. These contracts expressly govern the terms and conditions of plaintiffs' 2002 Ameriquest Loan and the forbearance period. See, e.g., Note at 1-3 ("This written agreement contains all the terms the Borrower(s) and the Lender have agreed to;" disclosing the initial interest rate, that interest rate may change, that loan is subject to prepayment penalty, and providing other terms of the loan). Where such a contract exists, plaintiffs have an adequate remedy at law, and they cannot claim unjust enrichment. See Ruiz, 447 F. Supp. 2d at 29. That the governing contract does not support plaintiffs' recovery under breach of contract is insufficient to find an inadequate legal remedy. See Okmyansky, 415 F.3d at 161-62 (rejecting plaintiff's unjust enrichment claim where valid, express contract governed the parties' relationship, even where the facts did not support claim for breach of that contract). Accordingly, plaintiffs' unjust enrichment claims should be dismissed.

**F.     Count VII (Breach of the Covenant of Good Faith and Fair Dealing) Against Ameriquest Fails Because the Alleged Contract Upon Which It Is Based Has No Legal Effect**

Plaintiffs' breach of the covenant of good faith and fair dealing claim against Ameriquest likewise fails because plaintiffs' claim is based upon pre-contractual statements with no legal force. The covenant of good faith and fair dealing "applies only to conduct during performance of the contract, not to conduct occurring prior to the contract's existence, such as conduct affecting contract negotiations." Accusoft Corp. v. Palo, 237 F.3d 31, 45 (1st Cir. 2001)

Here, plaintiffs allege that Ameriquest breached the covenant of good faith and fair

dealing by providing different loan terms than those offered prior to the closing.  See Complaint at ¶¶ 93-95.  But when plaintiffs closed on the Ameriquest Loan on August 17, 2002, they executed the Mortgage and Note, which contained all of the essential terms of plaintiffs' mortgage loan and an express integration clause.  See Note at 1-3.  As integrated agreements, the Note and Mortgage extinguish any pre-existing contracts or agreements, oral or otherwise, that relate to the 2002 Ameriquest Loan because "[a] binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them."  See Coll, 50 F.3d at 1123 n.2; Winchester Gables, Inc. v. Host Marriott Corp., 2007 WL 3133410, at *5 (Mass. App. Ct. Oct. 30, 2007) (oral representations made prior to execution of contract with integration clause are not legally binding unless such representations are made a part of the integrated contract).

Because plaintiffs allege an agreement containing loan terms inconsistent with those provided by the 2002 Ameriquest Loan, the alleged prior agreement is discharged because of the inconsistency.  Thus, plaintiffs have not alleged a valid contract upon which to base their claim for breach of the covenant of good faith and fair dealing.  See Agri-Mark, Inc. v. Niro, Inc., 233 F.Supp.2d 200, 208 (D. Mass. 2000) (an integrated agreement "supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter [of the contract]").

Moreover, the implied covenant of good faith and fair dealing may not be invoked to "create rights and duties not otherwise provided for in the existing contractual relationship." Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004).  In other words, plaintiffs are not entitled to any benefits or terms that are not a part of their contractual relationship with Ameriquest.  But plaintiffs seek just that—they claim they are entitled to mortgage loan terms different from those provided in the 2002 Ameriquest Loan.  See Complaint

at ¶¶ 94-95.  Courts, however, will not add terms to an existing contractual relationship under the implied covenant of good faith and fair dealing.  See Uno Rests., Inc., 441 Mass. at 386-88 (refusing to add terms not mentioned in parties' contract).  Indeed, "[t]he purpose of the covenant of good faith and fair dealing is not to supply contractual terms that the parties are free to negotiate."  Id. at 388.  Here, the Note and Mortgage dictate the terms of plaintiffs' contractual relationship with Ameriquest, and the covenant of good faith and fair dealing should not be allowed to modify those terms.

## V. CONCLUSION

For all the foregoing reasons, the Court should grant Ameriquest's and AMC's Motion to Dismiss and dismiss Counts I, III, IV, V, VIII and, only as to Ameriquest, Count VII, with prejudice.

      Respectfully Submitted,

      AMERIQUEST MORTGAGE COMPANY,
      and AMC MORTGAGE SERVICES, INC.

      By their attorneys,

      /s/  David D. Christensen
      _____
      R. Bruce Allensworth (BBO #015820)
      Phoebe S. Winder (BBO #567103)
      David D. Christensen (BBO #666401)
      KIRKPATRICK & LOCKHART
      PRESTON GATES ELLIS LLP
      State Street Financial Center
      One Lincoln Street
      Boston, MA 02111
      Tel: 617.261.3100
      Fax: 617.261.3175
      bruce.allensworth@klgates.com
      phoebe.winder@klgates.com
      david.christensen@klgates.com

Dated: November 16, 2007

## CERTIFICATE OF SERVICE

      I hereby certify that this *Memorandum of Law* filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 16th day of November, 2007, and to plaintiffs' counsel as follows:

Shennan Kavanagh
Gary Klein
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd Floor
Boston, MA 02111

                                          /s/ David D. Christensen
                                          _____
                                          David D. Christensen